<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANTHONY CURKO individually, on behalf of himself and all others similarly situated,<br><br>      **Plaintiff,**<br><br>v.<br><br>G.A.J.S., INC. d/b/a RIVER PALM TERRACE and JOHN CAMPBELL, individually,<br><br>      **Defendants.** | Civil Action No. 19-4426 (WJM)<br><br><br><br><u>OPINION</u> |

<u>FALK, U.S.M.J.</u>

This is a conditionally-certified collective action to recover minimum wages, overtime compensation, and alleged misappropriated gratuities under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* (the "FLSA"), the New Jersey Wage and Hour Law, N.J.S.A. 34:11-56a *et seq.* (the "NJWL").  Before the Court is Defendants' motion to strike Consent Forms filed by six putative opt-in plaintiffs and to dismiss them from the action.  [CM/ECF No. 68.]  The motion is opposed.  The Court decides it on the

papers.  Fed. R. Civ. P. 78.  For the reasons discussed below, the motion is **denied**.[1]

## BACKGROUND

On February 1, 2019, Plaintiff, Anthony Curko, filed a Complaint on behalf of himself and similarly situated co-workers (collectively "Plaintiffs") of the River Palm Restaurant ("RPT" or "Defendants")[2] in Edgewater, New Jersey alleging claims under the under the FLSA and NJWL.  Defendants filed an Answer on May 6, 2019.[3]  On July 18, 2019, the Court entered a Scheduling Order closing discovery on March 15, 2020. (CM/ECF 21.)

On July 31, 2019, the parties stipulated to conditional certification of the collective action consisting of all current and former servers who worked at RPT at any time between August 18, 2014, and July 31, 2019 ("Stipulation").  (CM/ECF No. 24.)[4]  The Stipulation provided that the putative opt-in plaintiffs would have sixty days from the date of mailing (the "Bar Date") of the FLSA Notice and Consent Form to join the action by returning their executed Consent Form to Plaintiffs' Counsel.   The Stipulation also stated that if the "Consent [Form] is not postmarked prior to the Bar Date, that individual will be barred from participating in this conditionally-certified collective."  (*Id.* at ¶6).

---

[1] As set forth in the Order that accompanies this Opinion, Defendants' motion is denied as to opt-in plaintiff Andrew Richmond.  With respect to the other five opt-in plaintiffs, it is denied conditioned upon their submission of sworn statements supporting and explaining their reasons, as articulated in the opposition brief, as to why their respective Consent Forms were returned late.

[2] RPT is owned, operated, and controlled by Defendants G.A.J.S., Inc. and John Campbell (together referred to as "Defendants") (CM/ECF No.1, ¶ 2.)

[3] An Amended Complaint, adding Plaintiff Herbert Larsen, was filed on January 10, 2020. (CM/ECF No. 46.) Defendants answered the Amended Complaint on February 28, 2020.  (CM/ECF No. 53.)

[4] The parties submitted the Stipulation which the Court entered as an Order on August 1, 2019. (CM/ECF No. 24.)

On September 4, 2019, Plaintiffs' Counsel mailed the Notice and Consent Forms which had a Bar Date of November 4, 2019.

Subsequent to the Bar date, Plaintiffs filed Consent Forms on the Court's docket for six individuals on the following dates: Andrew Richmond ("Richmond") on November 12, 2019 (CM/ECF No. 40); James Christof ("Christof"), Mark DeVincenzo ("DeVincenzo"), and Mark Safarian ("Safarian") on April 8, 2020 (CM/ECF No. 55); Jorge Garcia Torres ("Torres") on July 9, 2020 (CM/ECF No. 59), and Daniel Tepale ("Tepale") on October 8, 2020 (CM/ECF No. 66). With respect to Richmond, although the Consent Form was placed on the Court's docket 8 days after the Bar Date, the Consent Form itself is undated. The Consent Forms of the other five individuals bear electronic signatures and dates on or within days of their filing, but in all cases after the Bar Date.

According to Plaintiffs, discovery had been extended several times at Defendants' request. Discovery is currently set to close on April 1, 2021. (CM/ECF No. 73.) Dispositive motions have not yet been filed. Plaintiff states that, as of the time of the filing of this motion, discovery had still been in its early stages, notwithstanding the age of the case.

Defendants moved to strike the Consent Forms of all six putative opt-in plaintiffs and dismiss them with prejudice from the action. Noting that the delays in the filing of the Consent Forms range from arguably a few days to nearly a year, Defendants contend that the putative opt-in plaintiffs are barred from participating in this case by the terms of

the parties' Stipulation governing the conditional certification of this collective action. Arguing that even if the Stipulation does not bar these individuals, Defendants should be dismissed from the case because they have failed to demonstrate good cause to justify the late filing of their Consent Forms.

Plaintiffs oppose Defendants' motion on several grounds.  With respect to Richmond, Plaintiffs contend that it has not been established that his Consent Form was returned late and that Defendants waived their right to object to its filing even if it were, given that they waited an entire year to move to strike.  Plaintiffs similarly argue that Defendants waived any right to challenge the Consent Forms of Christof, DeVincenzo and Safarian because instead of moving to strike when they were filed nearly a year ago, Defendants served the individuals with discovery.  Plaintiffs maintain that the opt-in plaintiff's delay in returning the Consent Forms was justified, explaining that they were all Defendants' employees[5] during the notice period and feared that they would be subject to retaliation if they participated in the litigation.  Plaintiffs further assert that Defendants would not suffer any material prejudice because Defendants have already served discovery on four of the six opt-in plaintiffs and, in any case, discovery is in its early stages despite the age of this matter.  Finally, Plaintiffs maintain that judicial economy would be served by allowing the opt-in plaintiffs to litigate their claims now rather than compelling them to commence an entirely new action.

---

[5]Plaintiffs are referring to all opt-in plaintiffs except for Richmond.

## LEGAL STANDARD

Courts in this Circuit have analyzed untimely opt-in requests under the "excusable neglect" and "good cause" standards. *See Dasilva v. Esmor Correctional Servs., Inc.,* 2006 WL 197610, *2–3 (3d Cir. Jan. 27, 2006); *Moya v. Pilgrim's Pride Corp.,* 2006 WL 3486739, *1–2 (E.D.Pa. Nov. 30, 2006) (applying "good cause" standard in determining whether to accept untimely returned opt-in notices in FLSA action); *see also In re Cendant Corp. Prides Litigation,* 233 F.3d 188, 195 (3d Cir.2000) (leaving undisturbed on appeal district court's conclusions that "good cause" standard applied to "requests to extend deadlines for filing proofs of claim," and that "excusable neglect" standard applied to late-filed claims).  Untimely opt-in requests will be permitted if the movant can establish that there is good cause for the delay or that the delay is the result of "excusable neglect."  *See Boyington v. Percheron Field Servs., LLC*, No. 14-90, 2017 WL 1378328, at *3 (W.D. Pa. Apr. 12, 2017) (citing *Camesi v. Univ. of Pittsburgh Med. Ctr.,* No. 09-CV-85, 2009 WL 4573287, at *2 (W.D. Pa. Dec. 1, 2009)); *Potoski v. Wyoming Valley Health Care Sys.*, No. 11-00582, 2017 WL 11047059, at *1 (M.D. Pa. Nov. 17, 2017).   The determination of whether one party's failure to adhere to a deadline is excusable should take into account all relevant circumstances surrounding the delay. *See Pioneer Invest. Servs. Co. v. Brunswick Assoc. Ltd. P'ship,* 507 U.S. 380, 395, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993).

A generous reading of the FLSA is appropriate when considering issues of

deadlines. *See Kelley v. Alamo,* 964 F.2d 747, 749–50 (8th Cir.1992).  Relevant factors courts consider when determining whether to allow opt-in plaintiffs whose consent forms are filed after the deadline include prejudice to the defendant, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, whether the movant acted in good faith, judicial economy and the remedial purpose of the FLSA. *Id.* at 395; *see also Ruggles v. Wellpoint, Inc.,* 687 F.Supp.2d 30, 37 (N.D.N.Y.2009); *Boyington,* 2017 WL 1378328, at *3.

## DISCUSSION

For the reasons set forth below, Defendants' motion to strike is denied insofar as it relates to Richmond.  The motion to strike as it relates to the other five opt-in plaintiffs (Christof, DeVincenzo, Safarian, Torres, and Tepale (collectively referred to as "five opt-in plaintiffs")) is conditionally denied.  Upon balancing all of the factors, the Court has determined based upon the information supplied by Plaintiffs in the opposition brief, that the five opt-in plaintiffs had good cause for their delay and can properly remain in this case despite their failure to submit Consent Forms prior to the Bar date.  However, the record presented lacks sworn statements from the five opt-in plaintiffs upon which the Court can make a conclusive finding.  Therefore, the Court will deny Defendants' motion to strike the Consent Forms of the five opt-in plaintiffs conditioned upon submission by them of sworn statements explaining and supporting the reasons for their delay.

### (i)  Putative opt-in plaintiff Richmond

Plaintiffs filed Richmond's undated Consent Form on the docket on November 12,

2019, 8 days after the Bar Date.  (CM/ECF No. 40.)  It is quite possible that Richmond's

Consent Form had been postmarked by the Bar Date, although it appears that the

envelope bearing the postmark is currently not available for inspection.  So, it is not

possible to know for certain whether the Consent Form was timely returned.  But even if

it wasn't, the amount of time that could have passed from the postmark deadline to the

date the Consent Form was filed—only 8 days—is *de minimis*.  *See Thompson v. Peak

Energy Services USA, Inc.*, No. 13-0266, 2014 WL 789087, *2 (W.D.Pa. Feb. 26, 2014)

(denying motion to dismiss untimely consents submitted shortly after the deadline).

Importantly, Defendants have not been prejudiced in any appreciable way by

Richmond's notice to join this collective action, even if it was late.  As stated above,

Defendants received notice of Richmond's consent to join when his undated Consent

Form was filed on the docket on November 12.  Despite having knowledge of the

purported tardiness, Defendants engaged in discovery with Richmond, serving him with

discovery demands and presumably receiving responses to them.  In fact, according to

Plaintiffs, Defendants never raised the issue of the timeliness before challenging it by

way of this motion to strike which, notably, was filed more than one year after

Defendants were made aware of Richmond's consent to join.

Richmond has been treated as a party to this action since the time his undated

Consent Form was filed on the docket on November 12, 2019.  Any arguable delay by

Richmond in returning his Consent Form was minimal and has had no material effect on

this litigation.  Thus, in light of the *de minimis* nature of the timeliness of the filing and

the lack of any real prejudice to Defendants, Defendants' motion to strike Richmond's Consent Form is denied.

### (ii)   Opt-in Plaintiffs Christof, DeVincenzo, Safarian, Torres, and Tepale

Defendants have been aware of Christof, DeVincenzo and Safarian's Consent Forms to join this case since April 8, 2020, when they were filed on the Court's docket. (CM/ECF No. 55.)  According to Plaintiffs, notwithstanding the tardiness of the three Consent Forms, Defendants proceeded to serve written discovery on these three individuals.  Stated another way, Defendants chose to engage Christof, DeVincenzo and Safarian in discovery instead of moving to strike their Consent Forms at the time they were filed nearly a year ago.

Plaintiffs also point out that Christof, DeVincenzo and Safarian, as well as the other two opt-in plaintiffs, Torres and Tepale, were all employees of Defendants during the notice period.  Plaintiffs state that all five opt-in plaintiffs feared retaliation and being "black-balled" in the hospitality industry had they chosen to join this litigation, which explains their delay in doing so.  To this end, Plaintiffs have offered to provide, and the Court will require the five opt-in plaintiffs to submit, sworn statements attesting to the reasons and explanations for their delay in filing the Consent Forms.

Having weighed the factors, and based upon the record before it, the Court finds that the five opt-in plaintiffs should not be dismissed from this case due to any delay in returning their executed Consent Forms.  There is simply no real danger of prejudice to Defendants. Of the five individuals at issue, Defendants have already served discovery on

at least three of them.  Moreover, while there had been one settlement conference before the Undersigned some time ago, little if any progress towards settlement was made. Since then, the onset of the pandemic and its related problems have slowed the Court's administration of the docket including this case.  Any delay in discovery and prejudice precipitated by the entry of these late opt-in plaintiffs is negligible at best.  Indeed, given the challenges posed by the pandemic, including the likelihood that this case would not be given a trial date anytime soon, any delay resulting from these five late notices would be minor and should have no material effect on the litigation.

Assuming it can be supported by sworn statements, the Court will accept the opt-in plaintiffs' excuse for their late return of their Consent Forms.  There is no indication that any of the five opt-in plaintiffs acted with anything but good faith.  Plaintiffs state that the individuals were all employees during the notice period.  It is conceivable that the five opt-in plaintiffs were fearful that joining this case could result in retaliatory actions by Defendants, including discharge or being "blackballed" in the hospitality industry. *See Ayers v. SGS Control Servs., Inc.* No. 03-9078, 2007 WL 3171342, at *5 (S.D.N.Y. Oct. 9, 2007) (finding fear of blackballing in the industry to be good cause to allow late opt-ins).

Finally, and perhaps most importantly, judicial economy is best served by permitting the late opt-in plaintiffs to proceed in this case.  If the five opt-in plaintiffs are dismissed, they may simply file a new complaint (or perhaps individual lawsuits)

asserting their FLSA claims.[6]  This Court is in a judicial emergency and has been for some time.  It is not practical for the litigants or the Court to have a second case commenced when the opt-in plaintiffs' claims can be adjudicated with those of the existing Plaintiffs in one action.  In reaching its decision, the Court is mindful of the remedial purpose and liberal reading of the FLSA when considering challenges to time limits and deadlines.  *See Kelley v. Alamo,* 964 F.2d 747, 749–50 (8th Cir.1992) ("a generous reading [of the FLSA] ... is also appropriate when considering issues of time limits and deadlines."); *Monroe v. United Air Lines, Inc.,* 94 F.R.D. 304, 305 (D.C.Ill.1982) ("we should not become slaves of that deadline beyond its reason for existence").

In sum, Defendants have not shown that they will suffer any material prejudice if the five opt-in plaintiffs remain in the case.  While the Court is aware that the Consent Forms at issue were not filed within the time provided by the parties' Stipulation, the fact is any delay has no appreciable effect on this case.  *See Boyington,* 2017 WL 1378328, at *3 (finding more than seven month delay significant but not material).  Discovery is still open.  It has already started for at least three of the five opt-in plaintiffs, and will be minimal for the other two.  Practically speaking, allowing these individuals to stay in the case has virtually no effect at all on the length of the litigation, especially because any trial of this case may be years away.

---

[6] According to Plaintiffs, prior to the commencement of this lawsuit, the parties executed a tolling agreement tolling the statute of limitations under the FLSA and the NJWL, including claims of the opt-in plaintiffs, from August 18, 2014, through January 22, 2019.  (Pl.'s Br. 2.)  Notwithstanding the existence of this agreement, the Court makes no decision as to whether the opt-in plaintiffs' claims would be barred by the statute of limitations.

## <u>CONCLUSION</u>

For the reasons stated above, it is respectfully recommended that Defendants'

motion be denied.[7]

 

                                       **s/Mark Falk**

                                       **MARK FALK**

**Dated:  March 23, 2021**                 **United States Magistrate Judge**

---

[7] Defendants request that this Court award costs and legal fees associated with the filing of this motion on account of Plaintiffs' refusal to unilaterally withdraw the disputed Consent Forms.  The Court finds no reason in the record to conclude that such an award would be proper here.  Fees and costs are a discretionary matter. The law is sufficiently "wide-ranging" and evolving regarding whether late opt-in plaintiffs should be permitted to remain in a case.  *See Ruggles*, 687 F.Supp.2d at 37.  Based on the record presented, it does not appear that Plaintiffs exhibited any bad faith in refusing to withdraw the Consent Forms. Therefore, the Court declines to award costs and fees.